**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GARY BREAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO.  16-1161** |
| **TIM MORGAN, WARDEN** | **SECTION: "J"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Factual and Procedural History*

Petitioner, Gary Breaux, is a convicted inmate currently incarcerated at the Winn Correctional Center in Winnfield, Louisiana.    In 2010, he was charged by bill of information with possession of cocaine with intent to distribute, possession of diazepam and possession of a firearm by a convicted felon.[1]    Following a motion to suppress hearing and ruling

---

[1] State Rec., Vol. 1 of 5, Bill of Information.

denying suppression of his statement and the evidence,[2] he proceeded to trial where the following evidence was adduced.

The State offered the testimony of several NOPD officers involved in the narcotics investigation of Gary Breaux. [3]  Detective Harry Stovall testified that he personally observed Breaux sell narcotics to a confidential informant during a controlled purchase. No video surveillance was conducted.  The sale took place in the doorway of the residence located at 3420 Livingston Street.  Detective Stovall also determined through his investigation that Breaux drove a white Ford Windstar van.  Detective Stovall obtained a search warrant based on these facts, but did not immediately execute the warrant because when he returned neither Breaux nor his vehicle were present at the residence.  Assisting officers located Breaux nearby sitting in his van and relocated him to the residence in order to proceed with the execution of the warrant.

Detective Stovall used a key from Breaux's keyring to open the door to the residence. Three other individuals, Simon Yarborough, Timothy Waters and Frank Williams, were present at the time.  The key was left at the residence with one of the occupants and was not introduced into evidence.  Sergeant Palumbo, Detective O'Brien and Detective Lorio

---

[2]  State Rec., Vol. 1 of 5, Minute Entry, 1/19/11.

[3]  State Rec., Vol. 1 of 5, Minute Entry, 3/14/11.  *See also*, Trial Transcript, State Rec., Vol. 3 of 5.  The State also called Officer George Jackson who testified as an expert in the field of latent-fingerprint examination and identified Breaux's fingerprints on court documents.

assisted Detective Stovall with the search of the residence.    Detective Stovall determined based on statements made by the individuals present, including Breaux himself, that the back bedroom belonged to Breaux.    In that bedroom, detectives found narcotics, digital scales and other paraphernalia, and a firearm.    The search uncovered no items bearing Breaux's name, *i.e.*, credit card statements, utility bills, bank statements, etc.    Detective Stovall admittedly did not attempt to question the other individuals about whether or not they had access to the back bedroom.

Detective Stovall related two voluntary statements that Breaux made to him, one verbal and one written.    Detective Stovall testified that Breaux initially "blurted out" that anything the officers found inside the residence belonged to him.    When Detective Stovall asked if he would like to make a written statement, Breaux agreed, and recorded a statement that was different from his verbal statement.    He indicated that "due to his knowledge at the time, being the crack cocaine was not in his possession, not my intent to distribute." Detective Stovall searched Breaux himself at the residence after a K9 alerted and before he was transported to jail, and found numerous pieces of crack cocaine and a large amount of cash on Breaux's person.

Sergeant Sam Palumbo testified that he and other officers assisted Detective Stovall by canvassing an area nearby for Breaux and his vehicle.    He and Detective O'Brien located Breaux in his vehicle based on the information provided by Detective Stovall.    They ascertained his identity, detained him pending the investigation and transported him to the

residence to execute the search warrant.    Once at the residence, he learned from Breaux that he occupied the back bedroom and began a systematic search of the residence.    In the rear bedroom, Sergeant Palumbo found a bag containing crack cocaine and another bag containing cocaine residue, along with a scale with cocaine residue, inside of a nightstand next to the bed.    He found nothing with Breaux's name on it.

Detective Michael Lorio testified that he also assisted Detective Stovall in the investigation.    They entered the residence using a key Detective Stovall obtained from Breaux's keyring.    Detective Lorio assisted in the execution of the search warrant and the clearing of the house.    He searched the rear bedroom along with Detective Palumbo.    He found a couple of green pills wrapped in a napkin (determined to be Valium) and sandwich bags on the nightstand in the rear bedroom.    He found nothing in the rear bedroom with Gary Breaux's name on it.

Detective John O'Brien testified that he was involved in the investigation and arrest of Breaux.    They relocated to the residence with Breaux to execute the warrant and entered the residence with a key from Breaux's keyring after no one answered their knock at the door.    They discovered three other individuals inside the residence and detained them. He conducted a search of the premises with the other officers.    In the rear bedroom, he found a shoebox in the corner of the room that contained pieces of crack cocaine, a bag of marijuana, razor blades with cocaine residue and a small six-shot revolver.    He ran a check of the serial numbers on the revolver that came back with no record on file.    Detective

O'Brien also conducted the personal search of Breaux after a K9 unit alerted to the area where Breaux was seated. Detective O'Brien found a clear bag containing crack cocaine inside of Breaux's pants. Detective O'Brien did not find anything with Breaux's name on it during the search.

Finally, the State and the defense entered a joint stipulation regarding the testimony that criminalist William Giblin would provide if he were called as an expert witness in narcotics analysis at trial.

Breaux did not testify at trial. The defense was not allowed to call Breaux's father as a witness because it was determined he was in the courtroom and heard the testimony of the State's witness, Sergeant Palumbo, in violation of the trial court's sequestration order. Although subpoenaed, the defense did not call Terricka Hawkins, Breaux's girlfriend. The defense offered a stipulation as to three photographs of Yarborough introduced into evidence on behalf of the defense. The State agreed to the stipulation that he was the same individual found in the house on the date of the offense. In rebuttal, the State recalled Detective Stovall who testified that Yarborough was not the individual whom he witnessed conducting the narcotics transaction. The State also recalled Detective O'Brien who testified that Yarborough was not the individual he searched or from whom he confiscated the narcotics, and again identified Breaux as that individual.

Following trial, on March 14, 2011, a jury found Breaux guilty as charged on count one for possession of cocaine with intent to distribute. The jury found him not guilty on

the remaining two counts for possession of diazepam and possession of a firearm by a convicted felon.[4]    His motion for a new trial was denied.    The State filed an habitual-offender bill of information.    On June 24, 2011, he was sentenced to 20 years imprisonment at hard labor.    Following a multiple-bill adjudication, the original sentence was vacated and he was sentenced as a third-felony offender to 30 years imprisonment at hard labor.[5]

On direct appeal, Breaux asserted that he was denied due process and the right to present a defense when the court excluded his father as a defense witness at trial for violation of a sequestration order.    On February 27, 2013, the Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence.[6]    On October 25, 2013, the Louisiana Supreme Court denied his application for a writ of certiorari.[7]

On June 3, 2014, Breaux filed an application for post-conviction relief with the state district court in which he raised seven claims, none of which he advances in the instant federal *habeas* petition.[8]    On November 14, 2014, the state district court summarily denied

---

[4]  State Rec., Vol. 1 of 5, Minute Entry, 3/14/11; *see also* Jury Verdict.

[5]  State Rec., Vol. 1 of 5, Minute Entry, 6/24/11; *see also* State Rec., Vol. 2 of 5, Multiple Bill and Sentencing Transcript.

[6]  *State v. Breaux*, 2012-KA-0555 (La. App. 4th Cir. 2/27/13), 110 So.3d 281. State Rec., Vol. 4 of 5.

[7]  *State v. Breaux*, 2013-KO-0699 (La. 10/25/13), 124 So.3d 1093; State Rec., Vol. 4 of 5.

[8]  State Rec., Vol. 5 of 5, Uniform Application for Post-Conviction Relief.

relief.[9]    Breaux's related supervisory writ application was denied by the Louisiana Fourth Circuit Court of Appeal on February 5, 2015.[10]    His writ to the Louisiana Supreme Court was denied on January 15, 2016.[11]

On January 29, 2016, Breaux filed his federal application for *habeas corpus* relief.[12] In his petition, Breaux claims that he was denied the right to present a defense when the trial court excluded his father as a defense witness for violation of a sequestration order.    The State concedes that Breaux has exhausted his remedies in the state courts and that the federal application is timely.    The State argues that the claim should be dismissed on the merits.[13]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to

---

[9]  State Rec., Vol. 1 of 5, Minute Entry, 11/14/14.

[10]  State Rec., Vol. 5 of 5, *State v. Breaux*, 2015-K-0075 (La. App. 4th Cir. Feb. 5, 2015).

[11]  *State ex rel. Breaux v. State*, 2015-KH-0566 (La. 1/15/16), 184 So.3d 8; State Rec., Vol. 5 of 5.

[12]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[13]  Rec. Doc. 12.

the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court

"identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Analysis*

Breaux claims here, as he did on direct appeal, that the trial court improperly disqualified his father and refused to allow him to testify as a defense witness because he violated the court's sequestration order. The record reflects that after the State rested its

case, the prosecutor brought up an alleged sequestration violation by Breaux's father, who

was slated as a defense witness.     Jurors were not present when the parties verified that it

was, in fact, Breaux's father in the back of the courtroom during at least Sergeant Palumbo's

testimony, and discussed the following:

MR. MITCHELL:

> He's not going to testify to anything that happened at the house, or
> anything that happened during the arrest.     Anything that he's going
> to testify to is a different issue of where it is that my client lives.

MS. HOLLAND:

> And Your Honor, we argue that there was a big part of all of what the
> detectives testify to was that this defendant lived at this residence.

THE COURT:

> Let me think about this for a moment.     I'm going in my office and I'll
> be back.

> (Court stands in recess.)

THE COURT:

> Okay.     On to this issue of the violation of sequestration – all right.
> This violation of sequestration rule – listen, there's no doubt in my
> mind that the witness violated the sequestration rule.     My rule – my
> order was very clear this morning.     It was literally no one in the
> courtroom when I gave the sequestration order besides the people
> that work here, and the gentleman came down, and came in, and he's
> been seated back there in and out, and has been present for, I can't tell
> you what percentage of the testimony, but Code of Evidence, Article
> 615 provides the sanctions for a violation of the exclusion order,
> including contempt, appropriate instruction to the jury, or when such
> sanctions aren't sufficient, disqualification of the witness.

I can't hold lawyers in contempt for things that happen unintentionally and I wouldn't hold you guys in contempt anyway because I just don't think that would be right, and an appropriate instruction to the jury, I never could figure out what that one means. I mean, I can't comment on the evidence, nor can I comment on a witnesses testimony. So, that's out, which leaves us with disqualification of the witness.

Now, this is totally at the discretion of the trial court. So first let me hear from the moving party. Should I impose a sanction at all, and if so, I told you I'm not going to choose to exercise my authority to hold counsel in contempt, and instruction to the jury, I just – I don't know how that can apply in this case.

MS. HOLLAND:

And the State, in no way, believes that it is the fault of either defense counsel. We do acknowledge that this was unintentional but we do believe that since this witness has heard a substantial part of the testimony, at least one officer, if not more, and that one of the essential–

THE COURT:

Issues.

MS. HOLLAND:

-- issues at question is whether the defendant did live in this back bedroom where the evidence was found, that this is directly related to the testimony of the witnesses that have already testified, and we would ask that the witness be disqualified.

THE COURT:

Very persuasive argument, Mr. Mitchell?

MR. MITCHELL:

Judge, on behalf of Mr. Breaux, as you know, Your Honor, may well be

aware that my client has a sixth amendment right to present a defense.

THE COURT:

Uh-huh.

MR. MITCHELL:

And this particular witness is "important" to his defense.     Now as ADA graciously stated I was aware –

THE COURT:

But you should have been aware.

MR. MITCHELL:

When I looked around, I didn't see him, Judge.     But you said he's there, so he's there.     Judge, as I said before, he is not going to testify to anything that he could have learned from Sergeant Palumbo.

THE COURT:

Well, I don't know that until he gets on the witness stand.

MR. MITCHELL:

Exactly, Judge.

THE COURT:

And I have to make this decision before he gets up here.

MR. MITCHELL:

Judge, I suggest what we do is put him on the stand.     When he gets into something he's unfairly gained from Sergeant Palumbo, they can object, and we can take it to the bench at that point.     I don't believe – he's not going to testify to any event, anything that's happened at

the house, anything that happened during the arrest.    He's not going to testify to anything the officers did, or anything that Mr. Breaux did on that day.

THE COURT:

But it's a rule, and didn't I say when I announced that all witnesses should step out, didn't I say, "attorneys check the courtroom periodically and make sure that all your witnesses are outside?" Didn't I say that?

MR. MITCHELL:

That's correct, Judge, but as you know, this is a forward facing courtroom, and I can't see behind me when I'm listening to testimony.

THE COURT:

All you have to do is turn your head.

MR. MITCHELL:

Judge, when I looked back, I never saw the gentleman here. Trust me, I would have gotten him out of here.

THE COURT:

Well, if I would have known who he was, I would have had the sheriff to remove him, but I didn't know who the man was. What is it?

MS. HOLLAND:

Your Honor, the state offers that this witness is being called to directly impeach the testimony of these officers, that this defendant did not live at that residence on Livingston.    And any knowledge that he has, is unfair knowledge gained from violation of sequestration order.

THE COURT:

Well, that's what it all boils down to.    He's being called to prove that

Palumbo is a liar and has committed perjury, has committed felonious perjury here in this courtroom.

MR. MITCHELL:

But Judge –

THE COURT:

If the witness believes the gentleman who violated the sequestration order, then the upshot of that is that Palumbo has falsified a police report, which is a federal offense, and a state offense; he's violated your client's civil rights; and he's committed felonious perjury in this courtroom, and that's some pretty serious stuff. Don't you have another witness who is going to establish this as well?

MR. MITCHELL:

This one in particular, his element – he's the only one that can prove where he lives.

THE COURT:

But in the beginning you said the girlfriend was going to –

MR. MITCHELL:

Well, Judge, we are going to attempt to present him with a document that we need him to authenticate. He's the only person that can do that. Now we'd offer a stipulation it's a car title –

THE COURT:

It's a what?

MR. MITCHELL:

It's a car title.

THE COURT:

Is it in authentic form?

MR. MITCHELL:

Judge, it's how they give it to you when you get the vehicle.     That's what it is.     Now, if they want to stipulate that it's an authentic car title, then I imagine the father is not –

MS. HOLLAND:

No.

MR. MITCHELL:

-- needed.

THE COURT:

Well, again, it was your witness who violated the exclusionary rule. I mean, I'm trying to do what's fair to both sides, but this was your witness that violated the rule, and I mean, just – I asked you all to check the courtroom periodically and make sure that none of your witnesses were seated in the courtroom and I don't think that's too tall of an order. Especially, Mr. Mitchell, when you were sort of seated sort of facing this way towards the jury, and it wouldn't be that hard just to turn your head a quarter turn and see who's sitting here.     I wish I had known who he was because we wouldn't be here right now. If I knew that this man was your witness that you were referring to, I would have had the sheriff remove him from the courtroom, but I didn't know.     You know, sometimes, and you know, hindsight is 20/20, but sometimes the lawyers will bring the witness up, "ladies and gentlemen, this is Judge Parker.     Do any of you know Judge Parker? Okay, thank you.     You can step out." Okay?

All right, What do we have here?

MS. HOLLAND:

Your Honor, this is what is purported to be the car title. I'm unable to tell if this is a copy, or an original, and it's in the name of Gerry, G-E-R-R-Y Breaux. And so, I'm not sure how their witness, who is the defendant's father, will even be able to authenticate that.

MR. LUNEAU:

That title was in the van. The dad now drives the said van.

MS. HOLLAND:

And then again, Your Honor, that goes even more to the fact that these officers testified that the defendant was driving the van on the day in question. So if they are now going to say that the father drives the van, that is again, direct impeachment of the officers.

THE COURT:

Well, who is Jerry Breaux?

MR. LUNEAU:

Well, Your Honor, we're not going to actually say that the father now is driving the van. What we would stipulate to is that, or agree to is that his father is now driving the van now that Gary was arrested. G-E-R-R-Y is a mis – in the motion hearing we had some confusion regarding how to spell his name, whether G-A-R-Y, OR G-E-R-R-Y. Apparently, he's been called that before in court's document, and he's been called G-A-R-Y in court's document.

THE COURT:

Yeah, but this is not a court document. This doesn't have anything to do with what went on in my courtroom regarding a motion hearing.

MR. MITCHELL:

That's not what he's suggesting, Judge. There is some confusion

about how his name is spelled.

MR. LUNEAU:

Yes, sir.

MR. MITCHELL:

Different people spell it different ways.

THE COURT:

Oh boy.     I don't know. If y'all want to stipulate, that's your business.

MS. HOLLAND:

Your Honor, I don't believe that we can.     I'm not even sure if that's an original, and I don't know how the dad would be able to authenticate that.

When no stipulations were forthcoming as to the proposed documentary evidence offered by the defense in lieu of the witness's testimony, the trial court then ruled:

THE COURT:

Stipulations are strictly between the parties.     If you want to stipulate, fine.     If you don't want to stipulate, fine.     I don't have an opinion on that.     Would you prefer a contempt sanction?     I don't want to do that because that's going to go on this young man's record.

You know, sometimes lawyers are very cavalier when it comes to calling people liars and perjurers, and saying that police officers are falsifying police reports, and all that kind of stuff, but when you start throwing those ideas around and then you have a witness that you are going to use to try to show that, and that witness has the extra advantage of having been in court while the officer who is going to be the target of this argument is present.     I'm going to have to exclude him.

MR. MITCHELL:

Please note our objection, Your Honor.[14]

Though defense counsel did not proffer the father's testimony, it appears based on the colloquy that the nature and substance of his testimony involved alleged mistaken identification and residence (*i.e.*, counsel sought to offer evidence with respect to the spelling of Breaux's first name as "Gary" versus "Gerry" by using a title to Breaux's Ford Windstar van and with respect to the fact that Breaux did not reside at the municipal address where the contraband was found).

Breaux's claim that his father's testimony was improperly excluded was uniformly denied on direct review in the state courts. In rejecting the claim, the Louisiana Fourth Circuit Court of Appeal reasoned:

> Article 764 of the Code of Criminal Procedure provides that the exclusion of witnesses is governed by Louisiana Code of Evidence Article 615, which provides as follows:
>
> A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
>
> B. Exceptions. This Article does not authorize exclusion of any of the following:
>
> (1) A party who is a natural person.

---

[14] State Rec., Vol. 3 of 5, Trial Transcript, pp. 60-69.

(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney.

(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert.

(4) The victim of the offense or the family of the victim.

C. Violation of exclusion order. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or **when such sanctions are insufficient, disqualification of the witness.** [Emphasis added].

"The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses, and to strengthen the role of cross-examination in developing the facts." *State v. Doleman*, 2002–0957, p. 11 (La. App. 4 Cir. 12/4/02), 835 So.2d 850, 858 (citing *State v. Castleberry*, 98–1388, p. 28 (La. 4/13/99), 758 So.2d 749, 772; *State v. Chester*, 97–2790, p. 8 La. 12/1/98), 724 So.2d 1276, 1282); *see also State v. Coleman*, 2002–1000, p. 16 (La. App. 4 Cir. 9/25/02), 828 So.2d 1130, 1140.

"The trial judge, in his discretion, may determine the disqualification of a witness when a rule of sequestration has been violated." *State v. Draughn*, 2005–1825, p. 57 (La. 1/17/07), 950 So.2d 583, 621 (citing *State v. Stewart*, 387 So.2d 1103, 1107 (La. 1980)). This Court has recognized that "[r]esolution of sequestration problems is within the sound discretion of the trial court" and that such determinations will not be disturbed on appeal absent an abuse of that discretion. *Rhone v. Boh Bros.*, 2001–0270, p. 3 (La. App. 4 Cir. 12/12/01), 804 So.2d 764, 766–67; *see also State v. Draughn*, 2005–1825, p. 57, 950 So.2d at 621; *State v. Coleman*, 2002–1000, p. 16, 828 So.2d at 1140. However, "[w]hen the exclusion is of a defense witness, the matter takes on constitutional significance, as the defendant's right to compel the attendance of witnesses and to present his defense may be impaired." *State v. Armstead*, 432 So.2d 837, 842 (La. 1983).

The State submits that it is undisputed that Defendant's father, a witness for Defendant, was present in court during Sergeant Sam Palumbo's testimony at trial, in violation of the court's sequestration order. The State also emphasizes that the trial court discussed at length the possibility of either a cautionary instruction to the jury or holding counsel in contempt before determining that

disqualification of Defendant's father as a witness was the only feasible solution. The trial court concluded that a contempt finding would not be appropriate because the violation of the sequestration order appeared to be unintentional, and the trial court was unable to imagine an appropriate jury instruction for the violation. Therefore, the State submits that the trial court did not abuse its discretion in disqualifying Defendant's father as a witness.

Furthermore, the State argues that Defendant failed to proffer the substance of his father's excluded testimony, and that therefore, this Court is thus precluded from considering that issue on appeal, citing La. C.E. art. 103(A)(2)[15] and La. C.Cr.P. art. 921 ("[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."). The State also relies upon *State v. Green*, 2010–0791, p. 23 (La. App. 4 Cir. 9/28/11), 84 So.3d 573, 588, *writ denied*, 2011–2316 (La.3/9/12), 84 So.3d 551, wherein this Court found that a defendant who failed to proffer the substance of an officer's testimony was precluded from raising the issue on appeal. *See State v. Stevenson*, 02–0079 (La. App. 5 Cir. 4/30/02), 817 So.2d 343; *State v. Adams*, 537 So.2d 1262 (La. App. 4 Cir.1989).

---

[15] Article 103 provides:

A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Ruling admitting evidence. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection; or

(2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.

B. Record of ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon.

C. Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or asking questions in the hearing of the jury.

Additionally, the State maintains that Defendant failed to allege any prejudice as a result of the exclusion of his father's testimony. The State contends that Defendant argued only that his father would have testified that Defendant did not reside at the residence listed on the search warrant, where police ultimately recovered the handgun and diazepam. Since it appears that the jury found reasonable doubt as to whether Defendant resided at the residence where the handgun and diazepam were located, as evidenced by the jury's finding Defendant not guilty of these charges, the State argues that Defendant suffered no prejudice resulting from the exclusion of his father as a witness.

Defendant argues that although the trial court indicated in open court at trial that he had ordered sequestration of witnesses, there is no support for this assertion in the trial record or in the minutes. However, Defendant failed to make an objection in this regard at the time that the trial court determined that the sequestration order had been violated. Furthermore, Defendant did not raise this objection at the hearing on the motion for new trial.[16] Therefore, Defendant has waived this argument. *See* La. C.Cr.P. art. 841.

This Court has recognized that "the purpose of a sequestration order is to prevent a witness from hearing or learning of the testimony of the other witnesses before he takes the stand, preventing the witness from deliberately tailoring his testimony to that of other witnesses." *State v. Johnson*, 2001–2334, p. 5 (La. App. 4 Cir. 12/4/02), 833 So.2d 508, 511. According to Defendant, Defendant's father would have testified with regard to whether Defendant lived at the Livingston Street address, which was a significant part of Sgt. Palumbo's testimony that Defendant's father overheard at trial. Thus, the trial court imposed the sequestration order to prevent witnesses from tailoring or modifying testimony based upon testimony of other witnesses, and it properly excluded Defendant's father, who overheard the testimony of at least one of the State's witnesses.

Although it has been noted that "presence alone is not enough to warrant a

---

[16] Indeed, neither party expressed surprise or [sic] a lack of knowledge that a sequestration order had been in place during the colloquy with regard to the trial court's finding that Defendant's father had violated the sequestration order. Furthermore, at the April 15, 2011 hearing on Defendant's motion for new trial, counsel for Defendant did not argue that no sequestration order had been in place; rather, counsel for Defendant argued that the trial court should have given the jury a special instruction rather than exclude Defendant's father as a witness as a remedy for the violation of the sequestration order.

witness's disqualification," in this case, Defendant's father was not only present, but also overheard a significant portion of one of the State's key witnesses who testified at length regarding evidence purporting to establish Defendant's residence at the Livingston Street address. *State v. Harris*, 2001–2730, p. 43 (La.1/19/05), 892 So.2d 1238, 1261. Additionally, the *Harris* Court also recognized the well-settled principle that La. C.E. art. 615 "vests a trial judge with sound discretion to disqualify a witness when a rule of sequestration has been violated." *State v. Harris*, 2001–2730, p. 43, 892 So.2d at 1261.

Considering the foregoing, the trial court did not abuse its discretion in excluding Defendant's father's testimony pursuant to the violation of the sequestration order.[17]

The Louisiana Supreme Court denied his related writ application without assigning additional reasons.

To the extent Breaux may claim that the trial court's exclusion of the witness under Louisiana Code of Evidence article 615, constituted error or an abuse of discretion under state law, this is a question of state law and not a federal constitutional claim subject to federal *habeas* review. 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").   Thus, to the extent his improper exclusion of a witness claim rests on the proper interpretation and application of state procedural law, it does not provide him a basis for federal *habeas* relief.

This court's analysis must focus instead on due-process considerations, and due process requires that the court grant *habeas* relief only when the errors of the state court

---

[17]  *State v. Breaux*, 110 So.3d at 283-286 (footnotes in original).

make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.1986). Breaux claims he was not afforded a fair trial. He argues that disqualifying his father as a witness denied him the right to present a defense because he was "not permitted to produce evidence that he was not connected to the residence where the drug transaction forming the basis for the search warrant and the subsequent search occurred."[18]

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, ... or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, ... the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1968). However, when a witness violates a sequestration order, it falls squarely within the trial court's discretion to admit or exclude the witness's testimony, and every such instance does not necessarily result in a denial of due process. *See Holder v. United States*, 150 U.S. 91, 92 (1893); *Calloway v. Blackburn*, 612 F.2d 201, 204 (5th Cir. 1980). While acknowledging that a trial court retains the discretion to disqualify a witness who violates a sequestration order, the

---

[18] Rec. Doc. 1, p. 27.

Supreme Court also warned that this sanction should not be imposed lightly:

> If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, *and the weight of the authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court.*

*Holder*, 150 U.S. at 92 (emphasis added).    Notably, the Supreme Court did not define the "particular circumstances" that might support exclusion of a witness.

The United States Fifth Circuit had occasion to address circumstances when the exclusion of witnesses might be an appropriate remedy for a sequestration violation, and concluded:

> We hasten to point out that we do not invalidate state use of the rule, nor do we prescribe a particular procedure a state trial court must follow in determining whether exclusion is proper. Upon the particular circumstances of each case the trial judge must weigh the exclusion of the witness against the defendant's right to obtain witnesses in his behalf. Where the defendant has been advised of his constitutional right and there has been a knowing intelligent waiver by the defendant, exclusion would be permissible. And perhaps the consent, procurement, or knowledge on the part of defendant or his counsel might rise to the level of a waiver and thus render exclusion proper.

*Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir. 1972) (holding that the exclusion of the sole corroborating defense witness, who could have provided vital testimony for the defense, based on a sequestration violation, violated petitioner's Sixth Amendment right to present witnesses on his own behalf); *see also Barnard v. Henderson*, 514 F.2d 744, 745 (5th Cir. 1975) (district court erroneously denied *habeas* relief where state court's exclusion of

critical witness for inadvertent violation of sequestration rule prejudiced petitioner).

The circumstances contemplated in *Braswell* are not present in Breaux's case. Consent, knowledge or procurement did not factor into the trial court's reasons for excluding the witness. Rather, while the trial court criticized counsel's actions in failing to follow the sequestration order, the court ultimately declined to hold either trial counsel in contempt because the judge believed that counsel were unaware of the witness's presence in the courtroom and that the violation was not intentional.[19] The trial court dismissed the possibility of fashioning a jury instruction to remedy the situation, and determined that the sole remedy available was exclusion. The reason therefore was simple and straightforward. Breaux's father was present and heard the testimony of a detective on an issue that he would be offering testimony to counter, thereby possibly gaining a tactical advantage for the defense, albeit inadvertently. The state appellate courts concluded that the exercise of discretion by the trial court under the circumstances was proper. The reasons underlying the trial court's decision to disqualify the witness do not rise to the level of the "particular circumstances," mentioned in *Holder*, *supra.*, as construed by the United States Fifth Circuit Court of Appeals.

In any event, the question whether the witness was improperly excluded was

---

[19] *See* State Rec., Vol. 3 of 5, Trial Transcript, p. 61. Louisiana Code of Evidence article 615 provides that "[a] court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness." La. C.E. art. 615 (C).

rendered an academic exercise because Breaux was found not guilty on the counts for possession of diazepam and possession of a firearm by a convicted felon. Even if the Court were to conclude that the state courts unreasonably found the trial court's exercise of discretion on the exclusion of the witness was proper, *habeas corpus* relief still may not be granted unless actual prejudice resulted. *See*, *e.g.*, *Braswell*, *Barnard*, *supra*.

This Court's focus on *habeas* review is whether an error by the state court rendered the underlying proceeding fundamentally unfair. *Neyland*, 785 F.2d at 1293. Even assuming, *arguendo*, that the trial court's exclusion of the defense witness was improper, the Court finds the record is clear that Breaux has failed to demonstrate that his father's testimony was consequential, or stated otherwise, that its exclusion prejudiced him so as to render his trial fundamentally unfair. *See United States v. Zamora*, 15 F.3d 181 (5th Cir. 1994) (rejecting claim that exclusion of witnesses at trial for failure to make disclosures timely violated Fifth and Sixth Amendment where there was no reasonable possibility that the district court's alleged error contributed to the conviction, and any error was harmless beyond a reasonable doubt).

Breaux contends his father would have testified that Breaux did not reside at the address where the contraband was found. A review of the trial transcript shows, however, that this testimony was unnecessary, considering the State had failed to produce a shred of physical evidence connecting Breaux to the contraband discovered at the residence where other individuals were also present and admittedly resided. The jury verdict plainly

reflected this as he was found *not guilty* of possession of the drugs (diazepam) and the weapon recovered from the rear bedroom of the residence. He was found guilty of possession with intent to distribute the crack cocaine found during a search *of his person*. Thus, the absence of his father's testimony with respect to where Breaux resided clearly did not negatively impact the verdict in this case.

Breaux also suggests that he was prevented from establishing discrepancies in the name used to identify him in court documents (Gerry versus Gary). The record reflects that the defense sought to introduce the title to Breaux's Ford Windstar van through his father's testimony at trial. Breaux alleges that "the issue of identity is critical as to whether there was probable cause for the determination of Mr. Breaux away from the residence and the subsequent search of his person at the residence that the jury determined he had no connection to…."[20] However, the contention that his father's testimony was necessary to invalidate the search warrant or obtain suppression of evidence is untenable in light of the fact that a pretrial suppression hearing was held at which evidence was adduced, and the trial court ruled the evidence admissible. No suggestion was made that the defense intended to reopen the matter or that any different result would be warranted even if the defense managed to introduce the title and father's testimony about the name on the title into evidence at trial. Nor would such evidence of a discrepancy between a name appearing in a car title and documents associated with the criminal investigation have

---

[20] Rec. Doc. 1, p. 27.

altered the jury's verdict in this case. Breaux's identity was clearly established through the testimony of Detective Stovall, who personally observed Breaux at the residence engaging in a narcotics transaction, and Detective O'Brien, who searched Breaux himself and recovered the crack cocaine and currency on Breaux's person. The tenuous evidence of alleged mistaken identity would not have swayed jurors, who obviously rejected that defense strategy when the defense attempted at trial through photographs to show that Yarborough and Breaux were similar in appearance. For these reasons, Breaux has failed to demonstrate that the exclusion of this witness actually prejudiced him.

Accordingly, Breaux has not shown that the state courts' determination upholding the exclusion of the defense witness in this case was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

## RECOMMENDATION

**IT IS RECOMMENDED** that Breaux's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[21]

      New Orleans, Louisiana, this ___13th___ day of _____April_____, 2017.

_____
**MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE**

---

[21] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.